Filed 6/12/25

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re DANIEL LEE WHALEN,<br><br>On Habeas Corpus. | F085048<br><br>(Super. Ct. No. CRHC-16-005564)<br><br>**OPINION** |

APPEAL from an order of the Superior Court of Stanislaus County.  Linda A. McFadden, Judge.

Heather E. Williams, Federal Defender, Jennifer Mann and Karl Saddlemire, Assistant Federal Defenders, for Petitioner Daniel Lee Whalen.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, James William Bilderback II, Assistant Attorney General, Kenneth N. Sokoler, Ross K. Naughton and Catherine Tennant Nieto, Deputy Attorneys General, for Respondent the People.

-ooOoo-

Petitioner Daniel Whalen appeals the denial of his second state habeas corpus petition challenging the judgment of death he received after being convicted of the murder of Sherman Robbins in 1994.  We conclude the certificate of appealability is fatally flawed and dismiss the appeal.  We will remand for the court to either deny the

certificate of appealability or issue a new one compliant with Penal Code sections 1509–1509.1.  (Undesignated statutory references are to the Penal Code.)

***Procedural Background***

On June 13, 1996, a jury convicted Whalen of first degree murder (§ 187) during the commission of a robbery with a personal firearm use enhancement (§ 12022.5).  On June 18, 1996, the jury returned a death verdict.

After hearing Whalen's automatic appeal (§ 1239, subd. (b)), the California Supreme Court affirmed the judgment in *People v. Whalen* (2013) 56 Cal.4th 1.  The United States Supreme Court denied certiorari on October 7, 2013.  (*Whalen v. California* (2013) 571 U.S. 871.)

The California Supreme Court denied Whalen's first petition for habeas corpus in 2014.  On January 27, 2016, Whalen filed a second petition for habeas corpus with the California Supreme Court.[1]  The second petition was transferred to Stanislaus Superior Court pursuant to section 1509, subdivision (g).

In the petition, Whalen raised four claims, summarized by the superior court as follows:

> "In summary, Mr. Whalen's second habeas petition asks for relief based upon four claims.  Claim 18 requests relief based on alleged prosecutorial misconduct for relying on false evidence in violation of due process and ineffectiveness of trial counsel and appellate/habeas counsel for failing to raise this issue.  Claim 19 requests relief based upon alleged prosecutorial misconduct for vouching for the credibility of his witnesses and alleged trial counsel's ineffective assistance for failing to object to the evidence and appellate counsel failing to raise the vouching issue on appeal.  Claim 20 requests relief based upon trial counsel's alleged ineffective assistance in the penalty phase of the trial.  Claim 21 requests relief alleging the death penalty statue [*sic*] violates the Eighth and Fourteenth Amendments because the death penalty is cruel and unusual punishment under evolving standards of decency."

---

[1]On February 1, 2016, Whalen filed a petition for writ of habeas corpus in federal court.  The federal proceedings were later stayed at Whalen's request.

2.

On October 22, 2021, defendant filed a motion to declare section 1509, subdivision (d) unconstitutional.

On January 3, 2022, the Stanislaus Superior Court denied Whalen's petition. The court found the petition failed to merit relief under pre-Proposition 66 standards and, therefore, would have also failed under the more stringent standards post-Proposition 66. The court also found that "the issues raised [in] the second habeas petition are successive claims as they were previously raised or could have been previously raised …."

Whalen filed a notice of appeal on January 31, 2022, along with a request for this court to issue a certificate of appealability. On February 9, 2022, this court denied Whalen's request for a certificate of appealability. We held,

> "[Whalen] fails to establish the challenged testimony, evidence, or argument from claims l8 through 20 was unavailable or unknown to [Whalen] at the time of his direct appeal affirmed by the Supreme Court in 2013 or his original habeas petition denied by the Supreme Court in 2014. Similarly, [Whalen]'s resulting derivative claims of ineffective assistance of counsel either were, or could have been, presented on appeal or in the first habeas petition."

The Supreme Court granted review of this order and transferred the matter back to this court to vacate our order and to

> "consider whether the superior court ruled that the petition or its claims are successive under Proposition 66 and its implementing statute, … section 1509, subdivision (d), and accordingly whether a certificate of appealability is required under … section 1509.1, subdivision (c) and rule 8.392(b) of the California Rules of Court, or whether the matter should be remanded to the superior court so it may in the first instance decide whether the petition or its claims are successive under section 1509, subdivision (d), and if so whether to issue a certificate of appealability under section 1509.1, subdivision (c) and rule 4.576(b) of the California Rules of Court."

In an order issued on July 1, 2022, this court vacated its prior order and remanded the matter to the superior court to decide in the first instance whether the petition's claims are successive.

On September 7, 2022, the superior court issued an order stating, the "court again rules that the issues raised in the second habeas petition are successive claims as they were previously raised or could have been previously raised as detailed in the earlier ruling."

Whalen submitted a notice of appeal bearing a signature block date of September 27, 2022, and a file stamp date of October 3, 2022. The notice of appeal was again accompanied by a request for a certificate of appealability. The superior court issued a minute order on October 3, 2022, stating, in full, "Court grants Certificate of Appealability."

### Trial Evidence

We omit a recital of the underlying facts as unnecessary to resolution of the dispositive issue on appeal. For reference, a summary of the trial evidence may be found in the California Supreme Court's opinion, *People v. Whalen*, *supra*, 56 Cal.4th at pages 11 to 24.

## DISCUSSION

### I. The Certificate of Appealability Is Fatally Defective and the Appeal Must Be Dismissed and the Matter Remanded

#### A. Habeas Corpus Petitions Challenging Death Judgments

##### 1. Law

Section 1509 allows a person in custody pursuant to a judgment of death to file a petition for writ of habeas corpus. (§ 1509, subd. (a).) A petition under section 1509 is "the exclusive procedure for collateral attack on a judgment of death." (*Ibid*.)

Once the superior court rules on the petition, either party may appeal under certain conditions. (§ 1509.1, subd. (a).) If the petition is a "successive" one, the petitioner may only appeal the denial of relief "if the superior court or the court of appeal grants a certificate of appealability." (§ 1509.1, subd. (c).) Such a certificate may issue *only* if the petitioner has shown both a substantial claim for relief, which must be indicated in the

4.

certificate, and a substantial claim that the requirements of section 1509, subdivision (d) have been met. (§ 1509.1, subd. (c).) Importantly, "[t]he jurisdiction of the court of appeal is limited to the claims identified in the certificate and any additional claims added by the court of appeal within 60 days of the notice of appeal." (*Ibid.*)

### 2. *Background*

Here, the superior court ruled twice that Whalen's claims were successive. First, it concluded that "the issues raised [in] the second habeas petition are successive claims as they were previously raised or could have been previously raised …." The court later ruled, "that the issues raised in the second habeas petition are successive claims as they were previously raised or could have been previously raised as detailed in the earlier ruling."

Despite its finding of successiveness, the court issued an order stating simply, "Court grants Certificate of Appealability." The trial court did not identify any claims in the order.

### 3. *Analysis*

There are several deficiencies with the certificate of appealability. First, the certificate improperly failed to indicate the petitioner had shown "a substantial claim for relief." (§ 1509.1, subd. (c).) Additionally, the certificate of appealability does not identify which claims are being permitted to proceed on appeal. This is a crucial flaw because this court's jurisdiction is expressly "limited to the claims identified in the certificate." (*Ibid.*) Here, *no* claims are identified in the certificate. Consequently, we are without jurisdiction to consider any claims.

### B.     Section 1509, Subdivision (d) Is Constitutional

Whalen argues that section 1509, subdivision (d) is unconstitutional.

### 1. Law

"[T]he general rule is … that, absent justification for the failure to present all known claims in a single, timely petition for writ of habeas corpus, successive and/or untimely petitions will be summarily denied." (*In re Clark* (1993) 5 Cal.4th 750, 797 (*Clark*).) In *Clark*, the Supreme Court held that there are four exceptions to this procedural bar against successive petitions: (1) where an "error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner"; (2) the petitioner is actually innocent of the crimes; (3) the death penalty was imposed by a sentencing authority that "had such a grossly misleading profile of the petitioner before it that absent the trial error or omission no reasonable judge or jury would have imposed a sentence of death"; and (4) the petitioner was convicted or sentenced under an invalid statute. (*Id* at pp. 797–798.)

Proposition 66, passed in 2016, only recognizes two of the four *Clark* exceptions. A successive petition may only proceed if "the court finds, by the preponderance of all available evidence, whether or not admissible at trial, that [(1)] the defendant is actually innocent of the crime of which he or she was convicted or [(2)] is ineligible for the sentence." (§ 1509, subd. (d).) All other successive petitions—which would include those that satisfy one of the two other *Clark* exceptions—"shall be dismissed." (*Ibid*.)

### 2. Analysis

Whalen contends that by effectively eliminating two of *Clark*'s exceptions, section 1509 violates the Supreme Court's "broad powers of judicial review of death sentences to assure that each sentence has been properly and legally imposed and to safeguard against arbitrary or disproportionate treatment." (*People v. Frierson* (1979) 25 Cal.3d 142, 184.) We disagree. The Supreme Court—and now lower courts in some contexts—still have broad powers of judicial review of death sentences after Proposition 66. Death judgments are automatically reviewed by appeal. (§ 1239, subd. (b).) In that appeal, the

6.

defendant can raise all issues, including those that would later fall under any *Clark* exception. After the appeal is decided and the judgment becomes final, a defendant may mount a collateral attack through a habeas corpus petition. (§ 1509, subd. (a).) Here again there is no bar against raising issues that would later fall under any of the *Clark* exceptions. After that, a defendant may still file additional habeas corpus petitions, if he or she can show actual innocence or sentence ineligibility. (§ 1509, subd. (d).) It is only in this third "round" of challenges that the two *Clark* exceptions at issue may not usually be raised. (§ 1509, subd. (d).) It cannot be said this system infringes upon the judiciary's power to review death sentences.

Whalen argues section 1509 also violates the separation of powers doctrine. Whalen quotes *Clark* to indicate the Supreme Court adopted its four exceptions pursuant to its "inherent power to control its calendar and prevent abuse of the writ." (*Clark*, *supra*, 5 Cal.4th at p. 771.) However, that is not what *Clark* was saying there. Instead, it was rejecting the notion that *one particular statute* (§ 1475) purported to restrict the court's inherent power to control its calendar and prevent abuse of the writ. (*Clark*, at p. 771.) In any event, creating or recognizing *exceptions* to the bar on considering successive petitions is obviously not an exercise of the power to *prevent abuse* of the writ. And we are not aware of any authorities suggesting the judiciary's power to control its calendar is improperly infringed upon by statutes governing successive habeas corpus petitions.

### C. Application of Proposition 66 to Petitions Already Pending on its Effective Date

Whalen next observes that his purportedly successive petition was filed before the effective date of Proposition 66. He contends that Proposition 66 operates only prospectively and therefore it does not apply to his petitions.

Section 1509, implemented by Proposition 66, is part of the Penal Code. The Penal Code applies prospectively, unless a statute expressly provides otherwise. (§ 3.)

7.

However, we conclude the statute is clear that it applies to petitions that were already pending on its effective date.

On this point, we agree with *In re Tuilaepa* (2025) 108 Cal.App.5th 1262. That opinion observed that Proposition 66 expressly states, "'all sections of this act take effect immediately upon enactment and apply to all *proceedings conducted* on or after the effective date.'" (*Tuilaepa*, at pp. 1276–1277, italics added.)

Moreover, the voter pamphlet for Proposition 66 "stated that the proposed five-year time limit on appeals and initial habeas proceedings 'would apply to new legal challenges, *as well as those currently pending in court*.'" (*In re Tuilaepa*, *supra*, 108 Cal.App.5th at p. 1277.) The pamphlet then explained, "'In order to help meet *[these] time frames*, the measure places other limits on legal challenges to death sentences. For example, the measure *does not allow additional habeas corpus petitions to be filed after the first petition is filed*, except in those cases where the court finds that the defendant is likely either innocent or not eligible for the death sentence.'" (*Ibid*.)

Finally, section 1509 presupposes Proposition 66's application to pending petitions, stating "[i]f a habeas corpus petition is pending on the effective date of this section, the court may transfer the petition to the court which imposed the sentence." (§ 1509, subd. (g).)

### D. Section 1509.1, Subdivision (c) Limits this Court's Jurisdiction

Whalen emphasizes the difference between fundamental jurisdiction versus ordinary jurisdiction. (See *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 807 [fundamental jurisdiction is "the power of the court over the subject matter of the case"].) We acknowledge the difference but fail to see why it would lead to a different result here. Even assuming we have fundamental jurisdiction over this case, the same ultimate result obtains if we merely have no ordinary jurisdiction to consider the substantive claims Whalen has raised herein.

Ultimately, section 1509.1, subdivision (c) is quite clear that "[t]he jurisdiction of the court of appeal is limited to the claims identified in the certificate …." Whatever else the statute means, it certainly limits us to considering only those claims identified in the certificate of appeal. No claims were identified in the certificate of appealability. Consequently, we must vacate the certificate and remand for the superior court to either deny the certificate of appealability or expressly grant it as to any claims that satisfy section 1509.1, subdivision (c).

Whalen suggests that we can simply find that the trial court granted the certificate of appealability as to all claims, because we presume trial courts follow the law. But presumptions have no role where, as here, we know the information material to a determination of error. A certificate of appealability must "indicate[]" which of the claims were "substantial" (§ 1509.1, subd. (c).) That did not occur here. We do not have to presume whether or not section 1509.1, subdivision (c) was followed in this respect because the error is plain on the face of the order. And the failure to make the required indication in the certificate is crucial because we only have jurisdiction to consider identified claims. (§ 1509.1, subd. (c).)

Whalen similarly argues that, because "'all intendments are in favor of the judgment,'" appellate courts presume that the trial court decided all material issues. But here, the core error is not that the trial court did not *consider* a material issue (though that is possible here). Instead, it is that the certificate of appealability itself failed to "indicate[]" which of the claims were "substantial" (§ 1509.1, subd. (c)), which we need in order to determine the extent of our jurisdiction. The absence of this required information from the certificate is plain and does not require us to resort to any presumptions or inferences about what the trial court considered or reasoned.

Finally, Whalen suggests the People are estopped from objecting to the alleged deficiencies of the certificate. He says the People's motion to remand the case came 574 days after the superior court issued the certificate.

"Whether [a] party should be estopped depends on a weighing of equities in the particular case, the effect of estoppel on the functioning of the courts, and considerations of public policy." (*People v. Ford* (2015) 61 Cal.4th 282, 287.)

First, we observe that the People raised the issue in a motion filed 20 days after the appellant's opening brief, and then raised it again in their respondent's brief. It is common to raise jurisdictional issues in a respondent's brief, and here the People raised it even earlier than that. Of course, the People arguably could have filed a motion as soon as the notice of appeal was filed. Even assuming the failure to do so constitutes a "delay," we only point out that the purported delay was not particularly egregious here.

Second, declining to employ estoppel will not immediately and unconditionally end Whalen's judicial review. We will remand for the trial court to consider whether a certificate of appealability should issue.

Third, the People have a valuable interest in the enforcement of statutes enacted by the voters in the public interest.

Finally, we already concluded in our February 9, 2022, order in case No. F083835 that Whalen's claims are successive and that a certificate of appealability should not issue. While we vacated that order pursuant to a Supreme Court directive and remanded for the superior court to decide the matter in the first instance, nothing in the Supreme Court's order reflected that it reached a contrary determination on the underlying merits. And we see no reason to revisit that determination. Consequently, it is unlikely that Whalen's inability to proceed on appeal at this time will ultimately result in denial of an otherwise meritorious claim.

For these reasons, we decline to employ estoppel here. We do not reach the remaining contentions of the parties.

## DISPOSITION

The appeal is dismissed. The matter is remanded to the trial court to make the evaluations required by sections 1509–1509.1 in order to determine whether to issue or

10.

deny a certificate of appealability.  The court may only issue a certificate of appealability "if the petitioner has shown both a substantial claim for relief, *which shall be indicated in the certificate*, and a substantial claim that the requirements of subdivision (d) of Section 1509 have been met."  (§ 1509.1, subd. (c), italics added.)

PEÑA, Acting P. J.

WE CONCUR:

MEEHAN, J.

SNAUFFER, J.