Filed 8/29/25  Clare v. Richard CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| LOUISE CLARE, | B327010 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BD531584) |
| v. | |
| PIERRE RICHARD, | |
| Defendant and Appellant; | |
| LOS ANGELES COUNTY CHILD SUPPORT SERVICES DEPARTMENT, | |
| Intervenor and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Alexander C. D. Giza, Judge.  Affirmed.

Law Offices of Robert A. Brown and Robert A. Brown for Defendant and Appellant.

Zahn Law Offices, L. Paul Zahn and Monica L. Frye for Plaintiff and Respondent.

Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Gregory D. Brown and Jessica C. Butterick, Deputy Attorneys General, for Intervenor and Respondent.

# INTRODUCTION

This case presents a rather remarkable set of facts. Louise Clare (Clare) obtained a judgment of paternity against Pierre Richard (Richard) in Florida, where she resides. She then obtained a judgment of child support against Richard in California, where he resides. Richard made close to no child support payments to Clare for the entirety of the child's minority, amounting to over $524,258.63 in arrears.

More than a decade later, Richard successfully overturned the Florida paternity judgment for ineffective service of process. He then filed a motion to vacate the child support judgment in California because there was no longer a paternity determination linking him to the child. He sought to wipe away the hundreds of thousands of dollars in child support arrears he failed to pay since 2011. The trial court denied Richard's motion to vacate.

On appeal, Richard contends the trial court had no fundamental jurisdiction over him and the child support matter, rendering the judgment of child support void. Richard contends the vacated paternity judgment in Florida qualifies as a basis to vacate as void the child support judgment in California. Richard argues the trial court erred in denying his motion to set aside the child support judgment.

We disagree with Richard. We find the Los Angeles County Superior Court (LASC) had fundamental jurisdiction over Richard in the child support action. We also find the child support judgment is not void on the face of the judgment roll. We find the trial court did not abuse its discretion when it denied as untimely Richard's motion to vacate the child support judgment. We affirm.

2

# FACTUAL AND PROCEDURAL BACKGROUND[1]

A.     *Relevant Factual Background*

Clare and Richard met in 1999.  They had a brief sexual relationship and were never married.

Noah was born to Clare in November 2002; he is now 22 years old.  Noah lived with Clare in Florida.  Richard lived in California.

B.     *Clare's Paternity Action in Florida*

On March 12, 2009, Clare filed a petition in Broward County, Florida to establish Richard's paternity of Noah (*Clare v. Richard*, Fla. Cir. Ct. Broward County, No. 09-3257).[2]  She later filed a proof of service of summons.  On June 23, 2009, Clare filed a motion for entry of default against Richard.

---

[1]     We have reviewed the December 24, 2024 motion for judicial notice filed by the Los Angeles County Child Support Services Department, with 72 exhibits attached.  Exhibits 1-71 are part of the Los Angeles County Superior Court file in the underlying case; exhibit 72 is the online docket of the Florida paternity case.  We grant the motion for judicial notice as to exhibits 1-3, 9-13, 17-19, 23-24, 32-33, 37-38, 45-47, 55, 60-61, 66-67, 70-72, and deny the motion as to the remaining exhibits. (Evid. Code, §§ 459, subd. (a), 452, subd. (d).)

[2]     According to the Florida Courts Website, the Broward County Circuit Court is a trial court of general jurisdiction equivalent to the Los Angeles Superior Court.  (See Fla. Off. of the State Cts. Admin., Trial courts-Circuit <https://www.flcourts.gov/Court-Structure/Trial-Courts-Circuit> [as of August 27, 2025], archived as <https://perma.cc/LVR7-WKL3>.

On September 9, 2009, Clare filed an amended petition to establish paternity.

On March 23, 2010, the Broward County court entered a final judgment of paternity, and deemed Richard "the natural, biological father of the minor child and, therefore, the legal father of the minor child." The paternity judgment specified that the Broward County court "does not have jurisdiction over child support issues as they must be addressed where the Respondent/Father resides" (in California).

C.    *Clare's Child Support Action in California*

On September 9, 2010, Clare filed a petition in California against Richard for custody and support. Clare marked item 2(d) of the petition which states, "Petitioner and respondent have been determined to be the parents in," and included the information from the Broward County case. Richard was properly served with the moving paperwork on October 16, 2010, and Clare filed a proof of service of summons via substituted service on March 9, 2011, including a declaration of due diligence by a registered process server.

On December 10, 2010, Clare filed a request to enter default against Richard, with a declaration regarding service at his last known address.

On June 30, 2011, a default prove-up trial was held, resulting in the entry of the child support judgment. Richard was ordered to pay $2,735 per month in guideline child support with a retroactive start date of December 10, 2010. The trial court served notice of entry of judgment on Richard that same day.

In 2011, the Los Angeles County Child Support Services Department (the Department) got involved. Richard spoke with a "County worker" from the Department on December 2, 2011 via

4

telephone, and stated "he [and Clare] only had intercourse twice, and that he was unaware of the child support order."  The Department filed two notices regarding payment of support— once in 2011 and once in 2013—and served Richard with the same on October 1, 2013.

On April 14, 2012, Richard visited the Department "in person" to discuss the release of his driver's license (suspended for lack of child support payment); he was provided a copy of the child support judgment and a printout of the unpaid support balance.

D.     *Richard's Petition to Determine Parental Relationship*

On December 2, 2014, Richard filed a petition to determine parental relationship in LASC case No. BF051996.[3]  In item 1(b) of the petition, Richard stated under penalty of perjury that he is Noah's father.  In item 5(a), Richard identified Clare as Noah's mother.

On December 27, 2018, the case was dismissed because Richard failed to file a proof of service of summons and petition.

E.     *Richard's Motion to Quash Service of Summons*

On July 28, 2015, Richard filed a motion to quash service of summons in the child support case, arguing that service of the moving paperwork was improper.  Richard declared he "first learned" about the child support case in June 2014.

---

[3]     We have reviewed the Department's notice of lodging filed January 21, 2025 and on our own take judicial notice of the lodged records pertaining to LASC case No. BF051996.  (Evid. Code, §§ 459, subd. (a), 452, subd. (d); see *In re J.R.* (2022) 82 Cal.App.5th 569, 579, fn. 9 [taking judicial notice of trial court records sua sponte].)

On December 14, 2015, the trial court denied Richard's motion to quash. The court found Richard was properly served, and that he was not a credible witness. The court expressed concern that Richard waited five years to contest service when "the evidence before [the court] is that [he] has been aware of a child support claim against him for many, many years. During most of that time, his efforts to avoid it were from the records that have been presented to me to try and negotiate his way out of it . . . ."

F.    *Richard's Motion re Modification of Child Support*

One month later, on January 28, 2016, Richard filed a request for order (RFO) requesting downward modification of child support, determination of repayment plan on arrears, and release of his driver's license.

On March 25, 2016, Richard made his first child support payment—$200.

After some litigation, on March 28, 2017, the trial court issued its findings and order after hearing. The court found Richard had made only one payment of $200 since the support order had been in effect and ordered a monthly repayment plan of $500 on the arrears balance of $223,191. The court also ordered Richard to engage in job searches with a minimum of 10 applications per week. The court denied Richard's RFO and found he "failed to provide any reliable proof of his income and as a result has not met his burden of proof by a preponderance of the evidence that there has been a material change of circumstances warranting a modification to the current child support order."

G.      *Richard's Petition to Disestablish Paternity in Florida*

On April 2, 2019, Richard filed a petition to disestablish paternity in Broward County, Florida.  On May 23, 2019, the Broward County court dismissed the petition.

On June 12, 2019, Richard filed another petition to disestablish paternity, later dismissed on October 28, 2020.

H.      *Richard's Motion to Vacate Paternity Judgment in Florida*

On August 16, 2021, Richard filed a motion to vacate the paternity judgment in Broward County, Florida.

On March 15, 2022, the Broward County court concluded that it "lacked jurisdiction to enter the Default and Final Judgment of Paternity and Related Relief" because Clare's amended petition was "never served" on Richard.  The Broward County court granted Richard's motion and vacated the 2010 Florida paternity judgment, citing the firmly established rule that "[s]ervice of process is required against a defaulted party where a subsequent pleading asserts new or additional claims." The Broward County court found the entry of a final judgment on an amended, unserved petition following entry of a default violated due process.  It deemed the paternity judgment "void."

I.      *Richard's RFO to Vacate Child Support Judgment*

On July 7, 2022, Richard filed an RFO in California to vacate the 2011 child support judgment.  He argued that because the Florida paternity judgment was vacated, the California child support judgment was no longer supported by a finding of paternity linking Richard to Noah.  He argued that because the Florida paternity judgment was deemed void, the subsequent child support judgment in California is necessarily void as well.

He also argued the trial court has inherent power to vacate the child support judgment based on "equitable grounds."

On August 5, 2022, Clare filed her responsive pleadings. She argued that Richard's motion is untimely under Family Code[4] sections 3690 and 3691, which govern the grounds and time limits for a motion to set aside a support order. She also argued "11 years after my judgment for child support was entered, [Richard] seeks to set aside the judgment claiming it is void since the Florida paternity order has been vacated. He does not, however, actually support this claim with any statute or case law." Clare argued Richard "was aware of the existence of the pending action as of October 16, 2010" and "to avoid his obligation for support, he first sought to claim he was not served. When that failed, he requested a modification of support, which was also denied. He then changed tactics and moved his actions to Florida . . . to avoid his obligations. When armed with an order which benefited him, he then returned to this court with unclean hands and is now seeking equity from the California court." Clare argued laches applied.

On August 8, 2022, the Department filed responsive papers also opposing Richard's RFO. The Department calculated the child support arrears Richard owed at this point was $524,258.63.

After further argument on September 7, 2022, the trial court took the matter under submission. On December 2, 2022, the trial court issued its ruling denying Richard's motion to vacate:

---

[4] Undesignated statutory references are to the Family Code.

"This Court has already determined in a contested motion that service in this case was proper, and this Court has personal jurisdiction over Richard. This Court also has subject matter jurisdiction over family law issues. The vacating of the underlying Florida Paternity Judgment is a defect in this case that makes the Support Judgment in excess of jurisdiction. 'In contrast with judgments lacking fundamental jurisdiction, judgments or orders in excess of jurisdiction are valid unless attacked.' " Next, the trial court found Richard's motion was untimely per sections 3691 and 3692. It further found it "could only terminate the Support Judgment effective the date of Richard's Request for Order. . . . An order to vacate the Support Judgment as of July 7, 2022 would have no practical effect" as "Noah aged out before July 7, 2022." Finally, "[t]o the extent Richard is seeking for this Court to vacate the Support Judgment under its inherent equitable power, this Court declines to do so. The defect in this case is not lack of due process; rather, it is a determination of paternity. . . . If this Court were to grant Richard's request, Richard's acknowledged son would be denied appropriate support from his father because Noah is now emancipated. In considering all the circumstances in this case, this Court exercises its discretion and finds that vacating the Support Judgment would not be equitable."

This appeal followed.

## DISCUSSION

Richard challenges the order denying his motion to vacate the child support judgment and makes two primary arguments on appeal. First, he contends the California child support judgment should be "void because it is based on the Florida [paternity judgment] which the Florida court vacated as void for

9

lack of personal jurisdiction." Second, he contends the trial court erred in denying his RFO to vacate the child support judgment.

We find neither of Richard's contentions meritorious.

As explained below, the California child support judgment was not made void, but rather voidable, as a result of the Broward County court vacating the Florida paternity judgment. The trial court in California had fundamental jurisdiction over Richard in the child support matter. We also find no abuse of discretion in denying Richard's RFO to vacate the child support judgment as untimely given the passage of 11 years between entry of that judgment and the filing of the RFO.

A.    *Legal Principles*

Our Supreme Court has observed that although "the term 'jurisdiction' is sometimes used as if it had a single meaning, we have long recognized two different ways in which a court may lack jurisdiction." (*People v. Ford* (2015) 61 Cal.4th 282, 286 (*Ford*).) There is a distinction drawn between judicial action with no jurisdiction and judicial action in excess of jurisdiction.

Courts generally refer to jurisdiction over the parties and subject matter in any action as "fundamental jurisdiction," and where this is lacking there is an entire absence of power to hear or determine the case. (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1225 (*Gorham*); *Ford*, *supra*, 61 Cal.4th at p. 286; *People v. Lara* (2010) 48 Cal.4th 216, 224 (*Lara*); *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 807; *Kristine H. v. Lisa R.* (2005) 37 Cal.4th 156, 166, fn. 3.) When the court lacks fundamental jurisdiction, an ensuing ruling or judgment is *void*, and thus vulnerable to direct or collateral attack at any time. (*Gorham*, at p. 1225; *Ford*, at p. 286; *Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 1011 (*Orcilla*);

10

*Braugh v. Dow* (2023) 93 Cal.App.5th 76, 87 (*Braugh*).) Void judgments are ineffective and unenforceable. (*Gorham*, at p. 1226.)

In contrast, even when a court has jurisdiction in the fundamental sense (i.e., jurisdiction over the subject matter and the parties), it is still constrained by the Constitution, statutes, and relevant case law to act only in a particular manner or subject to certain limitations and procedural prerequisites. (*Ford, supra,* 61 Cal.4th at pp. 286–287; *Braugh, supra,* 93 Cal.App.5th at p. 87; *Lara, supra,* 48 Cal.4th at p. 224.) When a court has fundamental jurisdiction but acts or issues a ruling in *excess* of its jurisdiction, its act or ruling is *voidable* and is presumed or treated as valid until it is set aside. (*Lara*, at pp. 224–225; *Orcilla, supra,* 244 Cal.App.4th at p. 1011; *Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 340 (*Kabran*).) A party may be precluded from seeking to set aside such a ruling because of waiver, estoppel, or passage of time. (*Braugh*, at p. 88; *Ironridge Global IV, Ltd. v. ScripsAmerica, Inc.* (2015) 238 Cal.App.4th 259, 267 (*Ironridge*).)

A judgment or order is said to be *void on its face* when the invalidity is apparent on the face of the record, that is, upon inspection of the judgment roll. (*Braugh, supra,* 93 Cal.App.5th at p. 86; *Calvert v. Al Binali* (2018) 29 Cal.App.5th 954, 960 (*Calvert*).) "In superior courts, the following papers . . . shall constitute the judgment roll: [¶] (a) In case the complaint is not answered by any defendant, the summons, with the affidavit or proof of service; the complaint; the request for entry of default . . . , and a copy of the judgment." (Code Civ. Proc., § 670, subd. (a).) If the invalidity can be shown only through consideration of extrinsic evidence, such as declarations or testimony, the

judgment/order is not void on its face.  (*Braugh*, at p. 87.)

That a judgment is found void on its face is significant for purposes of timing of a challenge to it.  A judgment or order that is void on its face for lack of personal jurisdiction may be directly or collaterally attacked at any time.  California cases have generally precluded collateral attack where the invalidity of the judgment does not appear on its face.  (*Gorham*, *supra*, 186 Cal.App.4th at p. 1228.)  If the invalidity does not appear on its face, the judgment may be attacked either in an independent equitable action without time limits, or by motion in the action in which the judgment or order was entered, usually made under a statute providing for such relief within certain time limits or a reasonable time.  (*Ibid.*)

In addition to the general statutes that provide a basis for relief from a default judgment or order against a party in a civil case (i.e., Code Civ. Proc., §§ 473, subd. (b), 473.5, subd. (a)), various Family Code statutes specifically provide a basis for possible relief from such default judgment or order entered against a party in a family law proceeding.  (See e.g., §§ 2122, 3691, subds. (a)–(c), 7646, 7647, 17432, & 17433.)  We discuss these more fully below.

Finally, even where relief is no longer available under statutory provisions, a trial court generally retains the inherent power to vacate a default judgment or order on equitable grounds where a party establishes that the judgment or order was void for lack of due process or resulted from extrinsic fraud or mistake. (*Gorham*, *supra*, 186 Cal.App.4th at p. 1228.)  Nonetheless, a court sitting in equity in such a situation may refuse to exercise its jurisdiction by declining to grant affirmative relief, such as where " '(1) The party seeking relief, after having had actual

12

notice of the judgment, manifested an intention to treat the judgment as valid; and [¶] (2) Granting the relief would impair another person's substantial interest of reliance on the judgment.' " (*Id.* at p. 1229.)  Because of the strong public policy in favor of the finality of judgments, equitable relief from a default judgment or order is available only in exceptional circumstances.  (*Id.* at pp. 1229–1230; *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 982.)

B.     *Standard of Review*

The trial court's determination whether a judgment is void on its face is a question of law we review de novo.  The trial court's decision whether or not to set aside a judgment is reviewed for abuse of discretion.  (*Nixon Peabody LLP v. Superior Court* (2014) 230 Cal.App.4th 818, 822; *Calvert, supra,* 29 Cal.App.5th at p. 961; *Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1020; see also *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 495–496.)  We review the court's "denial of a motion for equitable relief to vacate a default judgment or order for an abuse of discretion, determining whether that decision exceeded the bounds of reason in light of the circumstances before the court."  (*Gorham, supra,* 186 Cal.App.4th at p. 1230.)  In doing so, we determine whether the trial court's factual findings are supported by substantial evidence and independently review its statutory interpretations and legal conclusions.  (*Ibid.*)

C.     *The Child Support Judgment is Not Void Because the LASC had Fundamental Jurisdiction.*

Richard contends the California child support judgment must be deemed "void, not voidable" as a result of the set-aside of the Florida paternity judgment as void.

13

Richard's position is not supported by the law.

The LASC had fundamental jurisdiction over the child support matter when it commenced. That is, the court had both subject matter jurisdiction and personal jurisdiction over the parties.

First, the LASC has subject matter jurisdiction to issue child support orders. Subject matter jurisdiction requires the court to have " 'authority to adjudicate the specific matter raised by the pleadings.' " (*In re Marriage of Jensen* (2003) 114 Cal.App.4th 587, 592.) Jurisdiction in any proceeding " 'is conferred by law; that is, by the Constitution or by statute.' " (*Id*. at p. 593.) Here, section 200 expressly provides "[t]he superior court has jurisdiction in proceedings under th[e] [Family] Code" (§ 200), including proceedings to order support for a minor child (see §§ 58, 3900–3901, 4000–4001). (See also *In re Marriage of Richardson* (2009) 179 Cal.App.4th 1240, 1243 ["Superior courts have exclusive jurisdiction over child support matters."].)

Richard argues that "an unconstitutional judgment of paternity in violation of due process never morphs into an enforceable child support judgment." Richard misunderstands. The judgment of paternity was in effect and not vacated or set aside when the child support action commenced in California. The judgment of paternity did not "morph" into a child support judgment. The LASC—more specifically, the family court division of the LASC— had subject matter jurisdiction to enter a judgment of child support in this case, irrespective of whether the underlying paternity finding was subsequently deemed flawed 11 years later. (See *In re A. C.* (2005) 130 Cal.App.4th 854, 860

14

["' [S]ubject matter jurisdiction either exists or does not exist at the time the action is commenced' "].)

Second, the LASC had personal jurisdiction over Richard in *this* case. Richard conflates the issue of the LASC's personal jurisdiction over him with the Florida court's decision finding that Clare's amended petition in the Florida paternity case was not served on Richard, leaving the Florida court with no personal jurisdiction over him. The Florida court's personal jurisdiction, or lack thereof, over Richard in a legal matter in Florida's Broward County has no bearing on the California court's personal jurisdiction over Richard in a separate case in Los Angeles, California.

Generally, personal jurisdiction "relates to the power to bind a particular party, and depends on the party's presence, contacts, or other conduct within the forum state." (*Donaldson v. National Marine, Inc.* (2005) 35 Cal.4th 503, 512, italics omitted.) Here, the record is clear that Richard resided in California throughout the entirety of these proceedings. Richard himself stated in his declaration filed in support of his July 28, 2015 motion to quash: "Since 1990 to the present I have continuously lived [in] . . . Los Angeles, CA." (See *In re Marriage of Fitzgerald & King* (1995) 39 Cal.App.4th 1419, 1425, fn. omitted ["Due process permits the exercise of personal jurisdiction . . . where the defendant is domiciled in the forum state when the lawsuit commenced"].) In fact, the Florida paternity judgment expressly specified that the Broward County court "does not have jurisdiction over child support issues as they must be addressed where the Respondent/Father resides," i.e., in California.

15

Ordinarily, a court gains jurisdiction over a defendant from the time the defendant is served with a copy of the summons and the petition on which it is based, as required under Code of Civil Procedure sections 410.50 and 412.20. (*Stancil v. Superior Court* (2021) 11 Cal.5th 381, 392; see also *Gorham*, *supra*, 186 Cal.App.4th at p. 1226 [" 'judgment is void for lack of jurisdiction of the person where there is no proper service of process on or appearance by a party to the proceedings' "].) Richard's briefs on appeal obfuscate the issue of service of process, especially because this very point was litigated by Richard by his July 28, 2015 motion to quash service of summons in the child support case, arguing that service of Clare's moving paperwork was improper. As set out above, the trial court denied his motion, finding Richard not credible. That order has long been final.

Richard relies heavily on *Gorham* for support, but that case does not assist him. In *Gorham*, extrinsic evidence showed the filed proof of service of summons was fraudulent, as Gorham was incarcerated at the time of alleged service and was never served with a summons and complaint. (*Gorham*, *supra*, 186 Cal.App.4th at pp. 1230–1232.) The court had never acquired jurisdiction over him. (*Id*. at p. 1230.) *Gorham* is a case implicating fundamental jurisdiction, rendering the default judgment "void as a matter of law based on the lack of personal jurisdiction." (*Id*. at p. 1234.) The same cannot be said for Richard's case, where it was determined in 2015 that the LASC had fundamental jurisdiction over Richard in the child support matter.

Because the LASC had both subject matter jurisdiction over the child support action and personal jurisdiction over

Richard, it had fundamental jurisdiction, i.e., the authority to issue a valid, lawful judgment of child support. The set-aside of the Florida paternity judgment upon which the child support judgment was based operated to cause the child support judgment to be in excess of jurisdiction (rather than lacking in fundamental jurisdiction). This renders the child support judgment voidable and not void; thus, it is presumed valid until and if it is set aside. (*Lara, supra*, 48 Cal.4th at pp. 224–225; *Orcilla, supra*, 244 Cal.App.4th at p. 1011; *Kabran, supra* 2 Cal.5th at p. 340.) This leads us to Richard's next argument.

D.    *The Trial Court Did Not Abuse its Discretion in Denying as Untimely Richard's RFO to Vacate the Child Support Judgment*

Richard contends the trial court erred in denying his July 7, 2022 RFO to vacate the 2011 child support judgment. Richard does not cite any statutory scheme providing the grounds on which his RFO to vacate/set aside was based; he grounds his arguments based on blanket statements like "due process" and "the Constitution." However, as we concluded in the preceding section, this is not a fundamental jurisdiction issue which can be raised at any time. (*Gorham, supra*, 186 Cal.App.4th at p. 1225; *Ford, supra*, 61 Cal.4th at p. 286; *Orcilla, supra*, 244 Cal.App.4th at p. 1011; *Braugh, supra*, 93 Cal.App.5th at pp. 87–88.) Thus the timeliness of Richard's filing of his RFO looms large. Richard's motion to set aside the child support judgment is subject to statutory deadlines.

Generally, statutes providing relief from a default judgment specify a window of time by which one must file a request seeking set-aside relief. Defendants ordinarily have six months from entry of judgment to move to vacate. (See, e.g.,

17

Code Civ. Proc., § 473, subd. (b), italics added ["the application . . . shall be made *within a reasonable time, in no case exceeding six months*, after the judgment"]; § 3691, subds. (a), (b), italics added [the "grounds and time limits for an action or motion to set aside a support order" based on actual fraud and/or perjury are "*within six months* after the date on which the complaining party discovered or reasonably should have discovered" the fraud or perjury]; § 3691, subd. (c)(1) ["[w]hen service of a summons has not resulted in notice to a party in time to defend the action" the "motion [to set aside the default] shall be served and filed *within a reasonable time, but in no event later than six months* after the party obtained or reasonably should have obtained notice . . . of the support order"].)  But if the judgment is *void on its face*, then the six-month limit does not apply.  (*Calvert*, *supra*, 29 Cal.App.5th at p. 960.)

Perhaps to escape the six-month limit, Richard contends the child support judgment is void on its face, i.e., upon an inspection of the judgment roll.  (*Braugh*, *supra*, 93 Cal.App.5th at p. 86.)  He refers to Clare's petition for support filed on September 9, 2010 in the child support matter and points out that she marked item 2(d) of the petition stating, "Petitioner and respondent have been determined to be the parents in," and included the information about Florida's Broward County case.  Because the 2011 judgment of child support was based, in part, on Clare's reference to the Florida paternity judgment, which was vacated in 2022, Richard contends this renders the child support judgment void.

Richard is mistaken.  The child support judgment is not void on the face of the judgment roll.  A judgment or order is void on its face when the invalidity is apparent upon an inspection of

18

the judgment roll or court record without consideration of extrinsic evidence.  (*Calvert*, *supra*, 29 Cal.App.5th at p. 960.)  "In superior courts, the following papers . . . shall constitute the judgment roll: [¶] (a) In case the complaint is not answered by any defendant, the summons, with the affidavit or proof of service; the complaint; the request for entry of default . . . , and a copy of the judgment."  (Code Civ. Proc., § 670, subd. (a).)  The judgment roll in this case includes Clare's petition for custody and support filed September 9, 2010, her proof of service of summons and a request to enter default filed December 10, 2010, the child support default judgment entered June 30, 2011, and the court's notice of entry of judgment to Richard filed June 30, 2011.  None of these pleadings demonstrate or evince that the Florida paternity judgment was invalid; how could they, when the judgment was valid for another 11 years until set aside on March 15, 2022.  That Clare's petition for support filed September 9, 2010 references the Broward County paternity judgment does not show that the child support judgment is void.  Richard must resort to presenting extrinsic evidence to demonstrate his claimed jurisdictional defect, for example, declarations, testimony, or a copy of the Florida court's March 15, 2022 decision vacating the paternity judgment.  Because the claimed invalidity must be proven by extrinsic evidence, the child support judgment is not void on its face. (*Braugh*, *supra*, 93 Cal.App.5th at p. 87.)

During oral argument, Richard argued that the California child support judgment was "a perfectly enforceable judgment" until March 15, 2022 when the Florida paternity judgment was set aside; he argued the California judgment should be deemed void "after March 15, 2022."  Not so.  Even if the underlying court

19

had agreed to terminate the child support judgment in effect since 2011, "a support order may not be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate." (§ 3651, subd. (c)(1); see also § 3653, subd. (a) ["An order modifying or terminating a support order may be made retroactive to the date of the filing of notice of motion . . . or to any subsequent date."].) Richard has cited no authority that allows for the underlying court to modify or terminate child support retroactively to a date *prior* to July 7, 2022—the date on which Richard filed his RFO. As the child reached the age of majority in November 2020, an order to terminate or vacate the support judgment as of July 7, 2022 would have had no practical effect.

Finally, Richard argues "no statutory time limit or laches" can be invoked against his RFO to vacate because "[t]here is no 'too late' when it comes to a constitutional right of due process." We do not accept his argument. Because the child support judgment is in excess of jurisdiction and thus voidable (as opposed to lacking fundamental jurisdiction and void), the usual defenses to any motion to set aside apply, including waiver, estoppel, laches or passage of time. (*Braugh*, *supra*, 93 Cal.App.5th at pp. 87–88; *Ironridge*, *supra*, 238 Cal.App.4th at p. 267.) The trial court denied Richard's RFO as "untimely" because sections 3691 and 3692, when read together, require that a support order be set aside within six months after the date on which the party discovered or reasonably should have discovered any alleged fraud or perjury. The trial court found Richard was "aware" of the child support action "[c]ertainly no later than July 28, 2015, when [he] filed his motion to vacate." The record amply

20

supports this finding.  Because Richard filed his RFO to vacate the judgment years after discovering the existence of the case, rather than within the allotted six-month window, we find no abuse of discretion by the trial court in denying Richard's RFO to vacate the child support judgment.

This case serves as a clear reminder of a well-established principle: parties must act diligently to preserve their rights and avoid forfeiting potential remedies through delay.

## DISPOSITION

The order is affirmed.  Clare is awarded costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

STRATTON, P. J.

We concur:

WILEY, J.               RUBIN, J.[*]

---

[*]     Retired Presiding Justice of the California Court of Appeal, Second District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21